UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BORTON & SONS, INC., a Washington Corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>NOVAZONE, INC., n/d/b/a PURFRESH, INC., a California Corporation,<br><br>        Defendant. | NO. CV-08-3016-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Before the Court, without oral argument,[1] is Defendant Purfresh, Inc.'s Motion for Partial Summary Judgment (Ct. Rec. 29), filed July 30, 2009. Purfresh is a food preservation company that installed an experimental ozone-generation system in Plaintiff Borton & Sons, Inc.'s Yakima apple storage facility. The ozone system allegedly malfunctioned and caused cosmetic damage to Borton's apples, decreasing their market-rate value. Borton sued Purfresh based on three (3) theories of liability: 1) breach of warranty, 2) negligence, and 3) product liability. In the instant motion, Purfresh argues that Borton's product

---

[1] The Court finds oral argument unnecessary. *See* Local Rule 7.1(h)(3).

ORDER * 1

liability cause of action should be dismissed because the Washington Products Liability Act ("WPLA") is inapplicable when the claimed harm is purely economic. After review, the Court agrees and dismisses Borton's Fifth Cause of Action (product liability). The reasons for the Court's Order are set forth below.

## I. Background[2]

Borton is a Washington company that grows, stores, and ships apples. Purfresh is a California company that provides preservation and purification solutions for food and water. In 2004, Borton agreed to let Purfresh install and operate an experimental ozone generation system in several of its apple-storage facilities.[3] In theory, the ozone system was designed to delay apple decay; in practice, the ozone system allegedly caused the apples to develop brown surface lesions. These surface lesions were purely cosmetic and did not otherwise alter the apples or make them dangerous for human consumption. They did, however, render the apples unmarketable at the retail level. Borton alleges that the surface lesions caused approximately $1.2 million in losses.

Borton initially sued Purfresh for its losses in Yakima County Superior Court, but Purfresh removed the action to federal court based on diversity jurisdiction. (Ct. Rec. 1.) After conducting discovery, Purfresh filed the partial summary judgment motion now before the Court. (Ct. Rec. 29.)

---

[2]Unless stated otherwise, the following facts are undisputed.

[3]The parties dispute whether Borton entered into an enforceable contract with Purfresh in connection with the ozone system's installation. That dispute is irrelevant for purposes of this motion.

ORDER * 2

## II. Discussion

**A.   Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties

ORDER * 3

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B.  Choice of Law**

In a diversity case, the federal district court applies the choice-of-law rules of the state in which it sits. *Kohlrautz v. Oilmen Participation Corp.,* 441 F.3d 827, 833 (9th Cir. 2006) (citations omitted). In contract cases, Washington state courts generally apply the law from the state where the contract was formed. *Federal Ins. Co. v. Scarsella Bros., Inc.,* 931 F.2d 599, 603 (9th Cir. 1991). Although the contract's validity is disputed here, it appears that the agreement was formed in Washington. Washington law therefore applies.[4]

**C.  WPLA**

WPLA permits a party to sue a manufacturer for harm caused by, *inter alia*, the design, production, assembly, testing, marketing, or labeling of a relevant product. RCW 7.72.010(4). If the harm caused by the relevant product is nothing more than pure economic loss, however, then WPLA recovery is precluded, and the party is left to seek redress under the Uniform Commercial Code. *Touchet Valley Grain Growers, Inc. v. Opps & Seibold Gen, Constr., Inc.*, 119 Wn.2d 334, 351 (1992). Washington courts refer to this as "WPLA's economic loss exclusion." *See id.* Thus, the central inquiry here is whether Borton's alleged harm is purely economic, or something more.

---

[4]The parties impliedly agree considering they both rely almost exclusively on Washington case law.

ORDER * 4

The Washington Supreme Court has identified two (2) tests to characterize a plaintiff's claimed harm: the first is the sudden and dangerous test; the second is the evaluative approach. Both tests are addressed below. *See id.* at 351.

### 1.  Sudden and Dangerous Test

Under the sudden and dangerous test, "economic losses are distinguished from other damages principally according to the manner in which the product failure occurred. If a product's failure is the result of a sudden and dangerous event, it is remediable in tort; if not, the product failure is deemed an economic loss." *Staton Hills Winery Co., Ltd. v. Collons*, 96 Wn. App. 590, 587 n.4 (1999).

There are two (2) Washington cases that provide perspective on what constitutes a sudden and dangerous event. In *Touchet Valley*, a grain storage building was designed and constructed to hold approximately 1.9 million bushels of grain. 119 Wn.2d at 351. After being properly filled to capacity, a portion of the building's wall collapsed, causing moisture and pests to destroy the stored grain. *Id.* The Washington Supreme Court found that the sudden structural collapse constituted a "sudden and dangerous event," and considered it "simply fortuitous" that no one was injured in the collapse. *Id.* at 354. In *Staton Hills*, a winery purchased five (5) steel tanks coated with food-grade epoxy in order to store Sauvignon Blanc. 96 Wn. App. at 592. During storage, the epoxy peeled away from the tank, mixed with the Sauvignon Blanc, and ruined the wine. *Id.* The Washington Court of Appeals concluded that the tanks' slow failure was far from a "sudden and dangerous event." *Id.* at 597.

ORDER * 5

Here, Borton did not suffer a "sudden and dangerous event" akin to the structural collapse in *Touchet Valley*; rather, the ozone system simply malfunctioned and expedited the apples' decay. So, like the tank malfunction in *Staton Hills*, the resulting harm to Borton was purely economic: a decline in the apples' market value.

**2.   Evaluative Approach**

Under the evaluative approach, courts consider 1) the nature of the defect; 2) the type of risk; and 3) the manner in which the injury arose. *Touchet Valley*, 119 Wn.2d at 353.

### i.   Nature of the Defect

Here, the nature of the defect was the ozone system's failure to preserve Borton's apples. Similar to the wine tanks in *Staton Hills*, the ozone system did not leak, explode, or come apart; it simply did not work as planned. This factor therefore implicates the bargain-expectation policies of contract law, not the safety-insurance policies of tort law. *See Staton*, 96 Wn. App. at 594 (noting the difference between contract law, which focuses on enforcing expectations created by agreement, and tort law, which focuses on protecting people and property by imposing a duty care on others).

### ii.   Type of Risk

Two (2) sub-components come into play under this factor: 1) the magnitude of the risk that the product posed to other people and property; and 2) whether the risks associated with the product were foreseeable. *Id.* at 598.

Here, it is undisputed that the ozone system posed no threat to humans (the apples were not poisonous), and that no property damage occurred other than the cosmetic damage to the apples inside Borton's

ORDER * 6

cold-storage facilities. And even drawing all inferences in Borton's favor, it is entirely foreseeable that an *experimental* ozone system might not work as planned. Taken together, the lack of human risk and the foreseeability of malfunction create an inference that UCC remedies, not tort remedies, should apply. *See id.* at 599.

### iii. Manner of Injury

The third factor, which is the manner of injury, effectively mirrors the sudden and dangerous test. *Touchet Valley*, 119 Wn.2d at 354. As stated, the ozone system's alleged malfunction was not a spontaneous event like the structural collapse in *Touchet Valley*; instead, apple damage, like the wine degradation in *Staton Hills*, occurred over time and did not threaten any persons or other property.[5]

**D. Summary**

Under either the sudden and dangerous test or the evaluative approach, the result is the same: Borton's alleged losses were purely economical. Therefore, WPLA's economic loss exclusion applies.

---

[5]The Court is mindful that "other property" damage technically occurred here because the ozone system malfunctioned and other property - the apples - was harmed. The Washington Court of Appeals has stated, however, that in some cases, WPLA's economic loss exclusion applies to claims for harm to other property. *See Staton*, 96 Wn. App. at 599 (applying WPLA's economic loss exclusion to both the defective wine storage tank *and* the spoiled Sauvignon Blanc). As discussed, *Staton Hills* is analogous to the facts here. Thus, WPLA's economic exclusion applies to both the defective ozone system *and* the damaged apples.

ORDER * 7

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Purfresh's Motion for Partial Summary Judgment **(Ct. Rec. 29)** is **GRANTED**.

2. Borton's Fifth Cause of Action (product liability) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this 22nd day of September 2009.

s/Edward F. Shea<br>EDWARD F. SHEA<br>United States District Judge

Q:\Civil\2008\3016.MSJ.wpd

ORDER * 8