UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BORTON & SONS, INC., a Washington Corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>NOVAZONE, INC., n/d/b/a PURFRESH, INC., a California Corporation,<br><br>                    Defendant. | NO. CV-08-3016-EFS<br><br>**ORDER GRANTING AND DENYING BORTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING PURFRESH'S MOTION TO EXCLUDE, AND GRANTING AND DENYING IN PART PURFRESH'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff Borton & Sons, Inc.'s ("Borton") Motion for Partial Summary Judgment (Ct. Rec. 57) and Defendant Purfresh, Inc.'s Motion to Exclude Plaintiff's Expert Witness John K. Fellman (Ct. Rec. 48) and Motion for Summary Judgment on Plaintiff's Negligence, Negligent Misrepresentation, and Warranty Claims (Ct. Rec. 52).[1]  After hearing oral argument on July 7, 2010, in Yakima[2] and

---

[1] Borton's motion was set for hearing with oral argument, while Purfresh's motions were set to be heard without oral argument.  The Court elects to rule on the three motions following hearing oral argument on Borton's motion.

[2] Borton was represented by John J. Carroll.  Purfresh was

ORDER * 1

reviewing the submitted material and relevant authority, the Court is fully informed.    For the below-given reasons, the Court grants and denies in part Borton's summary judgment motion, denies Purfresh's motion to exclude, and grants and denies in part Purfresh's summary judgment motion.

## I.    Background

As a company that grows, stores, and sells Washington apples, Borton was interested in lowering its cullage rate.[3]    Purfresh, a California company that provides preservation and purification solutions for food and water, offered an opportunity to decrease rot and decay experienced by apples during cold storage by utilizing an ozone generation system.    Although Purfresh[4] ozone generation systems were installed and operated in some of Borton's apple cold storage rooms, Borton contends that the apples in those rooms experienced significant lenticel damage,[5] resulting in above-normal cullage rates.    Borton brought this lawsuit to recover approximately 1.2 million dollars in lost profits as a result of the increased apple culls, seeking recovery

---

represented by Joel E. Wright and William R. Kiendl.

[3]    Culling is the process of putting aside inferior items.    American Heritage Dictionary (4th ed. 2009).    "Cullage rate" is used to define the amount of culls, i.e., inferior apples due to bruising, sun burn, or other abnormalities, in a selection of apples.

[4]    At this time, Purfresh was doing business as Novazone, Inc.

[5]    The lenticel damage caused the apples to develop brown surface lesions.

ORDER * 2

1  under three theories of liability: 1) breach of warranty, 2) negligence,

2  and 3) product liability.[6]

3      Through its summary judgment motion, Purfresh asks the Court to

4  dismiss Borton's breach of warranty and negligence causes of action.

5  Purfresh also asks the Court to exclude Borton's proffered expert

6  testimony relating to causation.  Borton opposes the motions and also

7  filed its own summary judgment motion, asking the Court to strike many

8  of Purfresh's affirmative defenses.

9      Although the summary judgment motions seek different relief, they

10  are largely contingent on whether the parties' agreement to operate the

11  ozone generation systems was oral or written.  Purfresh submits the

12  parties' agreement was memorialized in two written documents, a Letter

13  Agreement and a Confidentiality Agreement, that were signed in December

14  2004 by Paul White, Purfresh's president and chief operating officer, on

15  Purfresh's behalf, and by Craig Anderson, Borton's warehouse manager, on

16  Borton's behalf.  Borton contends that Mr. Anderson did not have the

17  authority to sign these documents and they are therefore not binding on

18  Borton; further, Mr. Borton, the president of Borton, emphasizes that he

19  clearly informed Mr. White that the parties' agreement was to be oral.

20      Whether Mr. Anderson had the authority to bind Borton when he

21  signed the two written documents is critical to the pending summary

22  judgment motions because the documents contain language disclaiming

23

24  ────────────────

25      [6]  The Court previously dismissed Borton's product liability cause

26  of action because the Washington Products Liability Act does not apply

when the claimed harm is purely economic.  (Ct. Rec. 41.)

ORDER * 3

warranties and allocating the risk of fruit damage to Borton.   In pertinent part, the Letter Agreement states:

> Borton acknowledges that the Systems are being installed in the Facility on a trial basis without representation or warranty of any kind or nature, whether written or oral, express or implied, including the warranties of merchantability and fitness. Novazone will not be liable for any special, incidental, or consequential damages (including loss of profits) alleged to have been suffered by Borton pertaining to the Systems.   Borton acknowledges and agrees that at all times the Systems shall remain the sole property of Novazone and may not be sold, encumbered, hypothecated, or assigned by Borton.
>
> . . .
>
> Borton hereby agrees to indemnify, defend, and hold harmless, Novazone and its agents, employees, officers, directors, partners, successors and assigns, from and against, all liabilities, obligations, losses, damages, injuries, claims, demands, penalties, actions, costs and expenses, including, without limitation, reasonable attorneys fees, of whatever kind and nature, in contract or in tort, arising out of a third party claim relating to the Systems or any part thereof, excluding, however, any of the foregoing which result from the gross negligence or willful conduct of Novazone or its employees or agents, or due to defect in the Systems.

Similarly, paragraph 7 of the Confidentiality Agreement states:

> Transferee acknowledges that the Systems and Information are suppled to Transferee WITHOUT ANY WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF TITLE, MERCHANTABILITY OR F FITNESS FOR A PARTICULAR PURPOSE OR ANY WARRANTIES REGARDING INFRINGEMENT OF THIRD PARTY RIGHTS.  Transferee agrees to rely solely upon its own opinion of the Systems and Information with regard to their safety and suitability for any purpose.

As explained below, the Court finds triable issues of fact exist relating to Mr. Anderson's authority to bind Borton by signing these documents.   Before delving into the legal analysis, the Court briefly continues to discuss the underlying events.

It is not clear which party approached the other, yet it is undisputed that both parties were interested in pursuing the idea that Purfresh would install ozone generation systems in Borton's apple cold

ORDER * 4

storage warehouse: Borton was interested in reducing its cullage rate, and Purfresh was interested in testing its equipment in an apple cold storage warehouse.  The parties appear to agree that there were four or five meetings held before the equipment was installed at the Borton warehouse.  The parties disagree, however, as to whether Mr. Borton was present for the majority of these meetings or only one meeting.  It is clear that Mr. White and Mr. Anderson were present for all meetings. Borton submits that during these negotiations an oral agreement was reached that Purfresh would operate ozone generation systems in some of Borton's apple cold storage rooms.  Mr. Borton maintains that Purfresh representatives told him that he would experience normal or below-normal cullage rates and assured him that his apples were not at risk.

Some time during August through November 2004, Purfresh installed three ozone treatment systems that serviced eleven apple cold storage rooms. On November 10, 2004, Mr. White faxed the Letter Agreement and Confidentiality Agreement to Mr. Anderson and Mr. Borton, indicating that the documents had to be signed before the systems began operation. It is unclear whether either Mr. Anderson or Mr. Borton saw this fax, but it is undisputed that no signature was received in response to the fax.  It is also unclear whether the systems began operating even though the documents were not yet signed.

In early December 2004, Mr. White flew to Yakima, Washington, where Borton is located, to obtain a signature on the documents.  Mr. White attempted to find either Mr. Borton or Mr. Anderson at the warehouse but was told they were at a horticultural convention in downtown Yakima. Mr. White went to the convention center and did not find Mr. Borton but did find Mr. Anderson.

ORDER * 5

Mr. White's and Mr. Anderson's deposition testimony differ as to the events and conversation that transpired. Mr. Anderson testified that he informed Mr. White that he did not have the authority to sign such documents – only Mr. Borton did.[7] Yet, Mr. Anderson acknowledged during his deposition that, after some discussion with Mr. White, he signed the documents and made notations on them to indicate that he was only agreeing to the confidentiality provisions contained in the documents.

Mr. White testified that, although Mr. Anderson appeared hesitant to sign the documents and mentioned that he "needed to have his boss's approval" to sign the documents, he ultimately did sign on Borton's behalf after being told by Mr. White that if the documents were not signed by either Mr. Anderson or Mr. Borton that Purfresh would remove the ozone treatment systems. It is undisputed that Mr. Anderson did not inform Mr. Borton that he signed these documents and Mr. Borton did not learn of the documents until they were provided by Purfresh during discovery. The copies of the documents provided by Purfresh show only Mr. Anderson's signature[8]; they do not show any limiting notations made by Mr. Anderson.

---

[7] When Mr. Anderson was hired in 2000 by Borton, Mr. Borton advised him that his signatory authority was limited to accepting fruit into the warehouse.

[8] The Court is unsure why the dates on the two documents differ. The Letter Agreement is dated December 7, 2004, while the Confidentiality Agreement is dated December 8, 2004.

ORDER * 6

Resolution of the question of agency is determinative of many of the presented legal issues.  Prior to addressing agency principles, the Court addresses Purfresh's motion to exclude Borton's expert.

## II. Analysis

**A.   Purfresh's Motion to Exclude**

Borton retained Professor John K. Fellman to provide an expert opinion regarding whether the introduction of ozone into the cold storage rooms was a causative factor in the excessive lenticel damage. Dr. Fellman concluded, "on a more probable than not basis, that the majority, but not all of the lenticel damage I observed in the pictures I have reviewed from the apples in storage in the affected rooms at the Borton facility are consistent with lenticel damage caused by ozone." Purfresh asks the Court to exclude Dr. Fellman's opinion because it is unduly speculative and will not assist the trier of fact given that Dr. Fellman based his opinion simply on reviewing pictures of the apples, did not visit the Borton facilities or obtain information from Borton personnel, and did not discuss the impact that a chemical applied pre-harvest to the apples had on the lenticel damage.

Federal Rule of Evidence 702 permits witnesses qualified as experts by "knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" to testify about "scientific, technical, or other specialized knowledge" if the knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The expert's testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods;" the expert must also apply these "principles and methods reliably to the facts of the case." *Id.*

ORDER * 7

Trial courts must act as "gatekeepers" and decide whether to admit or exclude expert testimony under Rule 702. *Daubert v. Merrell Dow Pharm., Inc. ("Daubert I"),* 509 U.S. 579 (1993); *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1179 (9th Cir. 2007). This "gatekeeping" function extends to all expert testimony, not just scientific testimony. *White v. Ford Motor Co.,* 312 F.3d 998, 1007 (9th Cir. 2002). While the Supreme Court did create a factor-based approach for analyzing expert testimony reliability,[9] it need not be applied in every case. *See United States v. Prime,* 431 F.3d 1147 (9th Cir. 2005) (noting that trial courts have broad discretion to determine how and to what degree these factors should be used to evaluate expert testimony).

Instead, the Rule 702 inquiry is a flexible, fact-specific inquiry that embodies the twin concerns of reliability and helpfulness. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999); *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174 1184 (9th Cir. 2002). The test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Down Pharm. ("Daubert II"),* 43 F.3d 1311, 1318 (9th Cir. 1995). Testimony that is reliable must nevertheless be helpful. The test for helpfulness is essentially a relevancy inquiry. *See Daubert,* 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and,

---

[9] These factors are: 1) whether a method can or has been tested; 2) the known or potential rate of error; 3) whether the methods have been subjected to peer review; 4) whether there are standards controlling the technique's operation; and 5) the general acceptance of the method within the relevant scientific community. *Daubert I,* 509 U.S. at 593-94.

ORDER * 8

ergo, non-helpful."). Trial courts may exclude testimony that falls short of achieving either of Rule 702's twin concerns.

Before applying this standard, the Court notes what is not at issue: Purfresh is not challenging Dr. Fellman's qualifications. Instead, Purfresh is challenging the reliability of Dr. Fellman's opinion that the introduction of the ozone is a causative factor in the excessive lenticel damage. The Court finds Dr. Fellman's opinion is sufficiently reliable and will be helpful to the jury. Dr. Fellman based his finding on his many years of research and teaching on the subject of post-harvest phenomena in perishable commodities, the photographs taken of the damaged apples, and the cullage records of the fruit from the other Borton cold storage rooms in that warehouse. Dr. Fellman may discuss his conclusions and explain the basis of his conclusions to the jury. Purfresh can cross examine Dr. Fellman on the basis of his opinion, including whether photographs are a sufficient basis to differentiate lenticel damage caused by ozone versus other factors. Purfresh's motion to exclude is denied.

**B.    Summary Judgment Motions**

As mentioned above, each party seeks summary judgment: 1) Borton's summary judgment motion seeks dismissal of Purfresh's affirmative defenses that attempt to avoid liability based on the two written documents signed by Mr. Anderson,[10] and 2) Purfresh seeks summary

_____

[10]    Purfresh contends Borton's failure to identify which of the affirmative defenses it is seeking dismissal of is grounds to deny the motion. The Court understands that Borton filed its broad request to ensure that it covered any affirmative defense that expressly or

ORDER * 9

judgment in its favor on Borton's a) warranty claims[11] because the two written documents signed by Mr. Anderson expressly disclaimed any warranties and b) negligence-related claims[12] because Borton fails to present sufficient evidence to support such claims and they are barred by the economic loss rule.[13]   Although the two summary judgment motions seek different relief, they are both dependent on whether Mr. Anderson bound Borton when he signed the Letter Agreement and Confidentiality

implicitly relies upon the argument that Borton is bound by Mr. Anderson's signature on the documents.   The Court allows this broadly-stated request.

[11]   Borton alleges breach of an express warranty (first cause of action), breach of the implied warranty of merchantability (second cause of action), and breach of the implied warranty of fitness for a particular purpose (third cause of action).

[12]   Borton's fourth cause of action alleges negligence and negligent misrepresentation.

[13]   Borton also asked the Court to grant its summary judgment motion because Purfresh failed to comply with Local Rule 56.1(b)'s requirement that a party opposing a summary judgment motion file a responsive statement of material facts.   Although Purfresh did fail to comply with Local Rule 56.1(b), the Court will not grant Borton's motion on this basis because the Court was fully apprised of the facts as proposed by Purfresh given Purfresh's statement of material facts filed in support of its summary judgment motion.   However, Purfresh is to take the necessary steps to familiarize itself with the Local Rules.

ORDER * 10

Agreement in December 2004.  Accordingly, the Court analyzes agency principles and then discusses the impact of the Court's agency findings on each summary judgment motion.

1.  <u>Standard</u>

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion.  *Id.* at 322.  "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts.  In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions

ORDER * 11

made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

    2.  <u>Choice of Law</u>

In a diversity case, the federal district court applies the choice-of-law rules of the state in which it sits. *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 833 (9th Cir. 2006) (citations omitted). In contract cases, Washington state courts generally apply the law from the state where the contract was formed. *Federal Ins. Co. v. Scarsella Bros., Inc.*, 931 F.2d 599, 603 (9th Cir. 1991). Although the basis of the contract is disputed, i.e., whether it is an oral or written contract, it is undisputed that the contract was formed in Washington. Washington law therefore applies.

    3.  <u>Warranty Claims: Agency Law and Disclaimers</u>

The parties agree that Borton cannot pursue its warranty claims if Mr. Anderson signed the two written documents on Borton's behalf and the disclaimers contained therein were bargained for. It is sharply disputed whether Mr. Anderson was acting on Borton's behalf and whether the disclaimers were bargained for.

In Washington, a corporation can act only through its agents. *W.E. Moses Lake Scrip & Realty Co. v. Stack-Gibbs Lumber Co.*, 56 Wash. 529, 533 (1910). Only an agent with a) actual or b) apparent authority to bind its principal may do so. *King v. Riveland*, 125 Wn.2d 500, 507 (1994). The burden of establishing authority rests on the one asserting

ORDER * 12

1  its existence. *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 178

2  (1978).

3          a.  *Actual Authority*

4      Actual authority, which is based on the principal's objective

5  manifestations to the agent, may be express or implied. *King*, 125 Wn.2d

6  at 507.  It is undisputed that Mr. Anderson did not have express actual

7  authority to sign the instant agreements on Borton's behalf.  Therefore,

8  the Court turns to whether implied actual authority exists.  Implied

9  actual authority exists 1) when an agent consistently exercises some

10  power without objection by the principal or 2) when a principal gives

11  the agent authority to perform particular services for a principal that

12  carry with it "implied authority to perform the usual and necessary acts

13  essential to carry out the services." *King*, 125 Wn.2d at 506-07.

14      First, there is no evidence that Mr. Anderson consistently

15  exercised power to sign documents waiving warranties and allocating loss

16  on Borton's behalf.  Mr. Anderson's power to sign documents accepting

17  fruit into the warehouse is significantly different in scope and nature

18  than the power to sign documents similar to the instant written

19  documents that disclaim warranties and allocate loss.

20      Yet, the resolution of the second implied actual authority test

21  depends on in which party's favor the Court views the evidence.  If the

22  evidence is viewed in Borton's favor, it is clear that implied

23  "particular services" actual authority did not exist.  Both Mr. Borton

24  and Mr. Anderson testified that Mr. Borton's grant of authority to Mr.

25  Anderson to oversee the installation and operation of the ozone

26  generation systems did not include the power to sign liability-related

documents, especially since the parties, prior to the installation of

ORDER * 13

1   the equipment, had entered into an oral contract that did not disclaim

2   warranties or allocate the risk of loss to Borton. Therefore,

3   Purfresh's summary judgment motion seeking dismissal of the warranty

4   claims based on the signed written documents is denied in part: Mr.

5   Anderson did not have either express or implied actual authority to bind

6   Borton by signing the written documents.

7       Yet, when the evidence is viewed in Purfresh's favor, triable

8   issues of fact exist as to whether Mr. Anderson had implied "particular

9   services" actual authority to bind Borton when he signed the documents.

10  A reasonable fact finder could conclude that Mr. Borton's grant of

11  authority to Mr. Anderson to oversee the installation and operation of

12  the ozone generation systems carried with it the implied authority to

13  sign documents essential to carrying out this task, including signing

14  documents that Purfresh contended were necessary in order to continue

15  the operation of the systems. Accordingly, Borton's summary judgment

16  motion is granted and denied in part: no express actual authority or

17  implied "consistently exercised" actual authority existed, but triable

18  issues of fact exist as to whether Mr. Anderson's authority to oversee

19  the installation and operation of the ozone generation system included

20  the implied authority to sign the instant written documents.

21          b.    *Apparent authority*

22      Apparent authority exists when 1) a third party reasonably believes

23  the agent has the authority to act on the principal's behalf and 2) the

24  third party's belief is traceable to the principal's manifestations.

25  *Udall v. T.D. Escrow Servs., Inv.*, 159 Wn.2d 903, 913 (2007). Apparent

26  authority "cannot be inferred from the acts of the agent," but must

    arise from the principal's objective manifestations to the third person.

ORDER * 14

*Washington v. French*, 88 Wn. App. 586 (1997). A principal makes a manifestation by "placing an agent in charge of a transaction or situation." *Udall*, 159 Wn.2d at 913 (quoting Restatement (Third) of Agency § 3.03 cmt. b at 174 (2006)). The principal's manifestations must cause the third party to "actually or subjectively believe that the agent has authority to act for the principal"; this belief must be reasonable. *Id*. (quoting *King*, 125 Wn.2d at 507). In assessing whether the third party's belief is reasonable, the court assesses whether:

> a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry.

*French*, 88 Wn. App. at 596 (quoting *Taylor v. Smith*, 13 Wn. App. 171 (1975)).

When the evidence is viewed in Borton's favor, it is clear that Purfresh could not reasonably believe that Mr. Anderson had the authority to make binding decisions regarding liability. Mr. Borton testified that he told Mr. White that only Mr. Borton made negotiating decisions and that Mr. Anderson's role was limited to helping facilitate the location and installation of the equipment. Further, Mr. Anderson advised Mr. White that he was only signing the documents to show that he agreed to be bound to the confidentiality provisions and his signature did not extend to bind Borton. Therefore, Purfresh's motion seeking summary judgment in its favor on Borton's warranty claims is denied.

When the evidence is viewed in Purfresh's favor, the Court also finds triable issues of fact as to whether Mr. Anderson had the apparent authority to bind Borton by signing the two documents. Mr. White testified that Mr. Anderson made a number of decisions during the

ORDER * 15

installation of the equipment and that on some of these occasions Mr. Anderson would contemplate whether he had the authority to make the decision.  If Mr. Anderson decided that he did not have the authority, he would so inform Mr. White.  Mr. White testified that he expected Mr. Anderson to make these scope of authority decisions, that he reasonably believed, when Mr. Anderson ultimately decided to sign the Letter Agreement and Confidentiality Agreement, that Mr. Anderson had the authority to sign the written documents, and that this belief was traceable to Mr. Borton's manifestation of placing Mr. Anderson in charge of coordinating the installation and operation of the ozone treatment systems.  Accordingly, when the evidence is viewed in Purfresh's favor, triable issues of fact exist as to whether Mr. Anderson had the apparent authority to bind Borton by signing the written documents:  Borton's summary judgment motion is denied in part.

    c.   *Agency Summary*

The Court rules as a matter of law that Mr. Anderson did not have express actual authority or implied "consistently exercised" actual authority; however, triable issues of fact exist as to whether Mr. Anderson had implied "particular services" actual authority or apparent authority to sign the two documents thereby binding Borton.  When resolving the agency question, the jury can consider, amongst other facts, Mr. Anderson's role in the parties' relationship, the timing of the obtained signatures on the written documents, and the lack of notations on the written documents.

    d.   *Disclaimers*

    If the jury finds that Mr. Anderson had either the implied actual authority or apparent authority to bind Borton by signing the written

ORDER * 16

documents, the jury will then be asked to determine whether the disclaimer was bargained for. *Hartwick Farms, Inc. v. Pac. Gamble Robinson Co.*, 28 Wn. App. 539, 542 (1981). Disclaimers are disfavored in Washington. *Id.* at 542-53 (citing *Berg v. Stromme*, 79 Wn.2d 184 (1971)). Therefore, in order to be effective, the disclaimer must 1) "be explicitly negotiated or bargained for," and 2) "set forth with particularity the qualities and characteristics being disclaimed." *Id.* at 542. The Court finds that the disclaimers in the written documents set forth with particularity the qualities and characteristics being disclaimed. Yet, genuine issues of material fact exist as to whether the disclaimers were bargained for. *See, e.g., Hartwick*, 28 Wn. App. at 543 ("A disclaimer which is made after a sale is completed cannot be effective because it was not part of the bargain between the parties."). Accordingly, Purfresh's summary judgment motion is denied in part because triable issues of fact exist as to whether the risk of loss provisions and warranty disclaimers are binding on Borton and whether the warranty disclaimers were bargained for.

    4. <u>Negligence Claims</u>

    Purfresh also asks the Court to grant summary judgment in its favor on Borton's negligence-based claims because a) Borton cannot satisfy the elements and b) they are barred by the economic loss rule. In its fourth cause of action, Borton asserts negligence and negligent misrepresentation. As explained below, the Court grants summary judgment in Purfresh's favor as to this cause of action.

    Regardless of whether Borton has presented sufficient facts to survive summary judgment on its negligence claims, the economic loss rule bars such claims. The Washington Supreme Court discussed and

ORDER * 17

applied the economic loss rule in *Alejandre v. Bull*, 159 Wn.2d 674, 683 (2007) (holding that the economic loss rule applies to residential purchases and therefore the negligent misrepresentation and other fraud claims were barred). "[T]he purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses." *Id.* at 683. Here, even though the basis of the contract is at dispute, there is no question that there was a contractual relationship.

The focus then is on whether Borton's alleged losses are economic losses. The Court holds that they are. In reaching this conclusion, the Court focuses "not on the product the defendant sold" but rather "the product the plaintiff purchased." *Stienke v. Russi*, 145 Wn. App. 544, 557 (2008). Although no money was exchanged, the product that Borton was to receive, when viewing the evidence in Borton's favor, was fruit that was in the same or better condition than it would have been in without the introduction of ozone. When focusing on the product to be received by Borton, Borton's alleged injury of lost profits due to the increased cullage rate is clearly an economic injury.

It is immaterial whether the parties explicitly addressed "any or all potential economic losses" during their oral discussions. *Alejandre*, 159 Wn.2d at 686-87. "If the party could have allocated its risk, the rule applies; all that is required is that the party had an opportunity to allocate the risk of loss." *Id.* at 887. Borton had the opportunity to allocate loss during its oral negotiations and in fact contends that it elected not to accept the risk of loss. The economic loss rule

applies.[14] Therefore, Purfresh's motion for summary judgment is granted in part: Borton's negligence and negligent misrepresentation cause of action (fourth cause of action) is dismissed.

### III. Conclusion

For the above-given reasons, **IT IS HEREBY ORDERED:**

1.  Purfresh's Motion to Exclude Plaintiff's Expert Witness John K. Fellman **(Ct. Rec. 48)** is **DENIED**.

2.  Purfresh's Motion for Summary Judgment on Plaintiff's Negligence, Negligent Misrepresentation, and Warranty Claims **(Ct. Rec. 52)** is **GRANTED** (fourth cause of action: negligence and negligent misrepresentation claims) **and DENIED** (Borton's warranty claims survive summary judgment).

3.  Plaintiff Borton & Sons, Inc.'s Motion for Partial Summary Judgment **(Ct. Rec. 57)** is **GRANTED** (Purfresh's affirmative defenses based on express actual authority or implied "consistently exercised" actual authority) **and DENIED** (Purfresh may present evidence to support its defense that Mr. Anderson had implied "particular services" actual authority or apparent authority).

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this ___12th___ day of July 2010.

<u>        s/Edward F. Shea        </u>
EDWARD F. SHEA
United States District Judge

---

[14] Because more than three years had passed since the oral agreement, the statute of limitations had run and Borton could not bring an action for breach of an oral contract.  RCW 4.16.080(3).

ORDER * 19